IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
DANNY K.,                          )
                                   )
            Plaintiff,             )
                                   )
     v.                            )      1:23CV856
                                   )
EXPERIAN INFORMATION               )
SOLUTIONS, INC,                    )
                                   )
            Defendant.             )
```

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, District Judge.

This is an action by Plaintiff Danny K. seeking recovery from Defendant Experian Information Solutions, Inc. ("Experian") for alleged failure to correct a credit report. Experian seeks to compel Plaintiff to arbitrate his claims. (Doc. 21.) Plaintiff has filed a response in opposition (Doc. 24), and Experian has filed a reply (Doc. 26). The parties have also filed extensive supplemental authority, which the court has considered. (Docs. 33, 35-39.) For the reasons that follow, Experian's motion to compel arbitration will be granted.

I.  BACKGROUND

In July 2022, Plaintiff applied for and received pre-approval for a Veterans Affairs home loan with Loan Depot LLC ("Loan Depot"). (Doc. 1 ¶ 46.) However, shortly thereafter, Loan Depot informed Plaintiff that the scheduled closing date would be delayed because Experian could not generate or return Plaintiff's credit

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
DANNY K.,                          )
                                   )
            Plaintiff,             )
                                   )
     v.                            )      1:23CV856
                                   )
EXPERIAN INFORMATION               )
SOLUTIONS, INC,                    )
                                   )
            Defendant.             )
```

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, District Judge.

This is an action by Plaintiff Danny K. seeking recovery from Defendant Experian Information Solutions, Inc. ("Experian") for alleged failure to correct a credit report. Experian seeks to compel Plaintiff to arbitrate his claims. (Doc. 21.) Plaintiff has filed a response in opposition (Doc. 24), and Experian has filed a reply (Doc. 26). The parties have also filed extensive supplemental authority, which the court has considered. (Docs. 33, 35-39.) For the reasons that follow, Experian's motion to compel arbitration will be granted.

I.  BACKGROUND

In July 2022, Plaintiff applied for and received pre-approval for a Veterans Affairs home loan with Loan Depot LLC ("Loan Depot"). (Doc. 1 ¶ 46.) However, shortly thereafter, Loan Depot informed Plaintiff that the scheduled closing date would be delayed because Experian could not generate or return Plaintiff's credit

report.  (Id. ¶ 48.)  Plaintiff then contacted Experian and learned through its representative that it inaccurately maintained Plaintiff's last name.  (Id. ¶¶ 50-53.)  Plaintiff requested a reinvestigation of the disputed information along with a corrected copy of his credit report.  (Id. ¶ 54.)  Experian reinvestigated and informed Plaintiff that Experian's system did not support the use of a single initial for a last name.  (Id. ¶¶ 55-59.)  As a result, Experian did not correct Plaintiff's credit file.  (Id. ¶ 61.)

In August 2023, Plaintiff again disputed the information on his Experian credit report, this time via a dispute letter.  (Id. ¶ 65.)  Experian declined to conduct another reinvestigation of Plaintiff's information, reasoning that the dispute letter did not appear to have been sent by Plaintiff or otherwise authorized by Plaintiff.  (Id. ¶ 68.)  Ultimately, Plaintiff's closing date was delayed, and he settled for a variable-rate mortgage at a higher interest rate while also paying an additional month of rent because of the delay.  (Id. ¶¶ 73-77.)

Plaintiff filed suit against Experian, alleging that it violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq. (Id. ¶¶ 83-100.)  Experian filed an answer that asserted eleven affirmative defenses, including that "Plaintiff's claims may be subject to arbitration in accordance with the terms and conditions of Plaintiff's membership with Experian."  (Doc. 8 at

2

22.) Almost ten months later, Experian filed the present motion to compel arbitration. (Doc. 21.)

Experian argues that Plaintiff enrolled in CreditWorks, a "credit monitoring service" that Experian provides through affiliate entities, on July 3, 2023. (Doc. 23 at 3, 5.) In support, Experian submitted the sworn declaration of Dan Smith, Director of Product Operations for ConsumerInfo.com, Inc., which does business as Experian Consumer Services ("ECS"). (Doc. 22 ¶ 1.) Smith, who has worked for ConsumerInfo.com, Inc. since January 2010, reports that he is familiar with the process whereby consumers enroll in CreditWorks, the forms they must complete to enroll in the service, and the webpages they would have encountered at their time of enrollment. (Id.) Smith further states that he can review Experian's internal records to determine when users log into their accounts or change their information in the CreditWorks system, and he says that he has access to each CreditWorks user's individual "date and time of enrollment, and the version of the Terms of Use they agreed to." (Id.)

Smith's declaration identified the relevant internet webform Plaintiff had to complete to enroll in CreditWorks on July 3, 2023. (Id. ¶¶ 3-5.) The webform required Plaintiff to provide his personal information, including his name, address, phone number, and email address. (Id. ¶ 3.) Beneath the boxes where Plaintiff was asked to input his information was the following text:

3

> By clicking "Create Your Account": I accept and agree to your Terms of Use Agreement, as well as acknowledge receipt of your Privacy Policy. I authorize ConsumerInfo.com, Inc., also referred to as Experian Consumer Services, ("ECS"), to obtain my credit report and/or credit score(s), on a recurring basis to:
>
> - Provide them to me for review while I have an account with ECS.
> - Notify me of other products and services that may be available to me through ECS or through unaffiliated third parties.
> - Notify me of credit opportunities and advertised credit offers.
>
> I understand that I may withdraw this authorization at any time by contacting ECS.

(Doc. 22-1 at 2.)

A clickable icon that read "Create Your Account" was directly beneath this text. Attached to Smith's declaration is the following screenshot of the webform Plaintiff would have viewed at this point:

4

## Tell Us About Yourself

**First Name**

**Last Name**

**Current Street Address**

**Apt, Unit**

**ZIP Code**  **City**  **State**

Have you lived at this address for 6 months or more?   ● Yes   ○ No

### Create Your Account

**Email Address**                                        This will be your username

**Password**                                                                    👁

What is the main reason you visited Experian today?

Please select an option

*Credit score calculated based on FICO® Score 8 model. Your lender or insurer may use a different FICO® Score than FICO® Score 8, or another type of credit score altogether. Learn more.

By clicking "Create Your Account": I accept and agree to your Terms of Use Agreement, as well as acknowledge receipt of your Privacy Policy.

I authorize ConsumerInfo.com, Inc., also referred to as Experian Consumer Services ("ECS"), to obtain my credit report and/or credit score(s), on a recurring basis to:

- Provide my credit report (and/or credit score) to me for review while I have an account with ECS.
- Notify me of other products and services that may be available to me through ECS or through unaffiliated third parties.
- Notify me of credit opportunities and advertised credit offers.

I understand that I may withdraw this authorization at any time by contacting ECS.

**Create Your Account**

(Id. at 2.)

5

According to Smith, clicking on the blue "Terms of Use Agreement" phrase would have redirected the user via a hyperlink to a webpage that contained the terms of a proposed agreement. (Doc. 22 ¶ 4.) The proposed agreement contained the following dispute resolution provision:

DISPUTE RESOLUTION BY BINDING ARBITRATION

PLEASE READ THIS CAREFULLY. IT AFFECTS YOUR RIGHTS.

Arbitration Agreement:

(a) the terms "you," "your," "we," "us," and "ECS" have the same meaning as those terms are defined in the Overview and Acceptance of Terms section above, and those definitions are hereby incorporated into this Arbitration Agreement.

<u>ECS and you agree to arbitrate all disputes and claims between us that arise out or relate to this Agreement, which includes any Information you obtain through the Services or Websites, to the maximum extent permitted by law, except any disputes or claims which under governing law are not subject to arbitration</u>. . . . This agreement to arbitrate is intended to be broadly interpreted and to make all disputes and claims between us directly relating to the provision of any Service and/or your use of any Website subject to arbitration to the fullest extent permitted by law. <u>The agreement to arbitrate includes, but is not limited to, claims brought by you against ECS, whether based in contract, tort, statute (including, without limitation, the Fair Credit Reporting Act and the Credit Repair Organizations Act), for fraud, misrepresentation or any other legal theory;</u> . . . .

(Docs. 22 ¶ 6; 22-2 at 9-10 (emphasis added).) It also contained the following delegation clause assigning to the arbitrator the determination of whether either party waived the right to arbitrate:

> *All issues are for the arbitrator to decide including, but not limited to,* (i) all issues regarding arbitrability, (ii) the scope and enforceability of this arbitration provision as well as the Agreement's other terms and conditions, [and] *(iii) whether you or ECS, through litigation conduct or otherwise, waived the right to arbitrate* . . . . Pursuant to this agreement, the arbitrator has been delegated with, and possesses, exclusive authority to resolve all of the above-enumerated types of disputes.[1]

(Doc. 22-2 at 11 (emphasis added).)

On this record, Experian moves to compel arbitration, and Plaintiff opposes the request. The motion is fully briefed and ready for resolution.

## II. ANALYSIS

In contesting Experian's motion to compel arbitration, Plaintiff presents two main arguments. First, Plaintiff disputes whether Experian has demonstrated that he agreed to arbitrate his claims at all. Second, assuming the parties agreed to arbitrate any dispute, Plaintiff contends that Experian waived its right to compel arbitration because of its delay in filing the motion to compel arbitration.

### A. Whether the Parties Agreed to Arbitrate

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., establishes "a liberal federal policy favoring arbitration

---

[1] A delegation clause is a contractual provision that "tasks the arbitrator," rather than the court, "with determining whether a particular controversy is covered by the parties' agreement to arbitrate." Mod. Perfection, LLC v. Bank of Am., N.A., 126 F.4th 235, 241 (4th Cir. 2025) (citing Hengle v. Treppa, 19 F.4th 324, 335 (4th Cir. 2021)).

7

agreements." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). "When parties have entered into a valid and enforceable agreement to arbitrate their disputes and the dispute at issue falls within the scope of that agreement, the FAA requires federal courts to stay judicial proceedings and compel arbitration in accordance with the agreement's terms." Murray v. United Food & Com. Workers Int'l Union, 289 F.3d 297, 301 (4th Cir. 2002) (citations omitted); see also 9 U.S.C. §§ 3-4. However, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960). As such, the court must determine whether parties have a valid and enforceable agreement to arbitrate. Berkeley Cnty. Sch. Dist. v. Hub Int'l Ltd., 944 F.3d 225, 234 (4th Cir. 2019).

The burden to establish that a binding arbitration agreement exists rests with the party seeking to compel arbitration. Minnieland Priv. Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co., 867 F.3d 449, 456 (4th Cir. 2017). The movant must demonstrate the following:

> (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of [a party] to arbitrate the dispute.

Whiteside v. Teltech Corp., 940 F.2d 99, 102 (4th Cir. 1991).

8

Generally, any ambiguity regarding the scope of the arbitrable issues should be resolved in favor of arbitration. Moses H. Cone, 460 U.S. at 24-25; Wachovia Bank, Nat'l Ass'n v. Schmidt, 445 F.3d 762, 767 (4th Cir. 2006).

To determine whether an arbitration agreement exists, a court essentially applies the summary judgment standard to assess whether there is a genuine dispute of material fact regarding the formation of the arbitration agreement. Rowland v. Sandy Morris Fin. & Est. Plan. Servs., LLC, 993 F.3d 253, 258 (4th Cir. 2021); Berkeley, 944 F.3d at 234. Once the movant has met its burden, the nonmovant must affirmatively demonstrate with specific evidence that there is a genuine dispute of material fact requiring trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986); see also Drews Distrib., Inc. v. Silicon Gaming, Inc., 245 F.3d 347, 352 n.3 (4th Cir. 2001) (holding that a trial on the existence of an arbitration agreement is inappropriate where the party opposing arbitration fails to unequivocally deny that an arbitration agreement has been made). In making its determination, "the court is entitled to consider materials other than the complaint and its supporting documents." Berkeley, 944 F.3d at 234 (citing Galloway v. Santander Consumer USA, Inc., 819 F.3d 79, 86 (4th Cir. 2016)).

"Whether an agreement to arbitrate was formed is . . . a question of ordinary state contract law principles." Rowland, 993

F.3d at 258. The parties agree that North Carolina law governs the contract formation dispute. (Docs. 23 at 8-9; 24 at 19.) "Under North Carolina law, a valid contract 'requires offer, acceptance, consideration, and no defenses to formation.'" Hightower v. GMRI, Inc., 272 F.3d 239, 242 (4th Cir. 2001) (quoting Koltis v. N.C. Dep't of Hum. Res., 480 S.E.2d 702, 704 (N.C. Ct. App. 1997)). Moreover, "contracting parties 'must assent to the same thing in the same sense.'" Austin v. Experian Info. Sols., Inc., 148 F.4th 194, 207 (4th Cir. 2025) (quoting Boyce v. McMahan, 208 S.E.2d 692, 695 (N.C. 1974)).

In support of its motion, Experian submitted Smith's sworn declaration, a screenshot of the CreditWorks webpage that Plaintiff would have interacted with when he enrolled, and a copy of CreditWorks's Terms of Use Agreement. (Docs. 22; 22-1; 22-2.) Smith testifies that, based on his "review of ECS's membership enrollment data maintained in the regular course of business," and based on his "familiarity with the CreditWorks enrollment process and ECS's databases that store consumer account information," Plaintiff enrolled in July 2023.[2] (Doc. 22 ¶¶ 1, 3.) Moreover, Smith states that Plaintiff could not have enrolled in CreditWorks

---

[2] Smith's employer, ConsumerInfo.com, Inc., does business as ECS. (Doc. 22 ¶ 1.) Although the Terms of Use Agreement is between Plaintiff and ECS, the court finds Experian can enforce the agreement, as other courts have routinely concluded. See, e.g., Willaims v. Consumerinfo.com, Inc., No. 24-cv-02017, 2024 WL 5186620, at *8 (D.D.C. Dec. 20, 2024); Oatway v. Experian Info. Sols., Inc., No. 24-cv-00523, 2024 WL 4879822, at *3 (W.D. Wash. Nov. 25, 2024).

10

without simultaneously agreeing to the Terms of Use Agreement. (Id. ¶ 3.) The included screenshot of the then-current CreditWorks enrollment webpage supports Smith's statements. (Doc. 22-1.)

Plaintiff has not expressly denied that he enrolled in CreditWorks in July 2023. (See Doc. 24 at 11.) Rather, he argues that CreditWorks's enrollment webpage did not provide adequate notice that, by creating an account, he agreed to arbitrate disputes. (Id. at 23.) Moreover, Plaintiff contends that Smith's declaration is inadmissible as evidence of an agreement to arbitrate because Smith lacked personal knowledge of Plaintiff's CreditWorks enrollment process. (Id. at 12-13.)

The court finds, as it and other courts across the country have acknowledged, that Smith's declaration is admissible. See, e.g., Kyre v. Experian Info. Sols., Inc., 24CV273, 2025 WL 1549895, at *6 (M.D.N.C. May 30, 2025); Jones v. Experian Info. Sols., Inc., No. 23-3887, 2025 WL 227198, at *2 (D. Minn. Jan. 7, 2025); Acorin v. Experian Info. Sols., Inc., No. 24-cv-00036, 2024 WL 5011950, at *5 (S.D. Cal. Dec. 6, 2024). Smith has been employed by ECS since January 2010. (Doc. 22 ¶ 1.) Moreover, Smith has testified that the scope of his employment requires that he be familiar with both the CreditWorks enrollment process and the databases that store account information related to a consumer's membership. (Id.) Based on this information, Smith states that he "confirmed the consumer's membership details, such as the date and time of

11

enrollment, and the version of the Terms of Use they agreed to." (Id.)

Smith's sworn statement provides sufficient authentication to support the presumption that "ordinarily, officers would have personal knowledge of the acts of their corporations." Catawba Indian Tribe of S.C. v. South Carolina, 978 F.2d 1334, 1342 (4th Cir. 1992) (en banc); see also Austin, 148 F.4th at 205 ("[A] corporate officer . . . would presumably be competent to testify regarding the registration of a user on a particular date and the terms of use in force at that time.").[3] Moreover, Plaintiff has not offered "evidence that he lacked that knowledge or was required to possess 'hyper-technical' information regarding the enrollment process." Austin, 148 F.4th at 205 (quoting Melo v. Zumper, Inc., 439 F. Supp. 3d 683, 694 (E.D. Va. 2020)). Thus, Smith's declaration is admissible and establishes that Plaintiff could not have enrolled in CreditWorks without agreeing to the Terms of Use Agreement.

Plaintiff further contends that, even if the court finds Smith's declaration admissible, he never received notice of the Terms of Use Agreement. (Doc. 24 at 19.) Without notice, Plaintiff argues, he never assented to the arbitration agreement.

---

[3] To the extent Plaintiff relies on the district court's opinion in Austin v. Equifax Information Services, LLC, No. 22cv707, 2023 WL 8646275 (E.D. Va. Dec. 14, 2023), and the reasoning set out therein to preclude Smith's declaration, see Doc. 24 at 13-16, Austin was subsequently reversed by the Fourth Circuit on this ground.

12

(Id. at 24.) However, Plaintiff has not produced any evidence to create a genuine dispute of material fact on the issue of mutual assent. (See id.)

Plaintiff argues that CreditWorks's enrollment webpage could not provide him with notice of the Terms of Use Agreement. (Id. at 23.) Yet the United States Court of Appeals for the Fourth Circuit recently held that a materially identical CreditWorks enrollment webpage put the plaintiff "on notice of the contract and its terms offered by CreditWorks, including the arbitration provision." Austin, 148 F.4th at 207. The court reasoned that when the "website provides clear and reasonably conspicuous notice that there are contract terms available by scrolling down or clicking a hyperlink, the user is on reasonable notice of those terms even if [he] never reads them." Id. at 208 (quoting Dhuvra v. CuriosityStream, Inc., 131 F.4th 146, 153 (4th Cir. 2025)). Thus, like the plaintiff in Austin, when Plaintiff "registered with CreditWorks, he accepted and agreed to its terms of use." Id. (citation modified). The parties therefore entered into an agreement to arbitrate disputes between them.

**B. Whether Experian Waived Its Right to Compel Arbitration**

Plaintiff argues alternatively that by delaying its motion to compel arbitration, Experian waived any such right it may have had. (Doc. 24 at 6-9.) Experian counters that its delay did not constitute a waiver and, regardless, the parties delegated the

13

waiver issue to the arbitrator by the clear and unmistakable language in the Terms of Use Agreement. (Doc. 26 at 2-4.) Notably, Plaintiff does not challenge — or even mention — the delegation clause. (See Doc. 24.) Rather, he points to Experian's conduct during the almost ten-month delay between its answer and the present motion. (Id. at 6-9.)

"[P]arties can agree to arbitrate 'gateway' questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 68-69 (2010). This reality "merely reflects the principle that arbitration is a matter of contract." Id. at 69. "Thus, when an agreement 'clearly and unmistakably' delegates the threshold issue of arbitrability to the arbitrator, a court must enforce that delegation clause and send that question to arbitration." Gibbs v. Haynes Invs., LLC, 967 F.3d 332, 337 (4th Cir. 2020) (quoting Rent-A-Center, 561 U.S. at 67). Only "if the claimant specifically attacks the validity of the delegation clause itself, a court may consider that clause's enforceability." Id. (citing Minnieland, 867 F.3d at 455).

Here, in relevant part, the Terms of Use Agreement provided: "All issues are for the arbitrator to decide including . . . whether you or ECS, through litigation conduct or otherwise, waived the right to arbitrate." (Doc. 22-2 at 11.) Plaintiff makes no argument to the contrary. Moreover, in all the

14

cases cited by Plaintiff to support his contention that Experian waived its right to arbitrate,[4] none addressed the enforceability of a delegation clause – presumably either because the parties' agreement lacked such a clause or the parties failed to raise the issue. (See Doc. 24 at 9.) Here, by contrast, the parties' agreement delegated the determination of waiver to the arbitrator, and Plaintiff has not attacked the clause's validity.

Because no ambiguity exists in the delegation provision, the court finds the arbitration clause clearly and unmistakably delegated the question of waiver based on litigation conduct to the arbitrator. See Lamonaco v. Experian Info. Sols., Inc., 141 F.4th 1343, 1349 (11th Cir. 2025) (holding that an identical CreditWorks arbitration provision delegated waiver issues to the arbitrator). Accordingly, the question of whether Experian waived its right to arbitration will be determined by the arbitrator.

C. **Stay of Action**

Experian requests that the court stay this action pending arbitration. (Doc. 23 at 16-17.) Plaintiff has not responded directly to this request, relying only on its contention that Experian waived any right to relief, including a stay, in light of

---

[4] Plaintiff cites Register v. Wrightsville Health Holdings, LLC, 843 S.E.2d 464, 472 (N.C. Ct. App. 2020); Joca-Roca Real Estate, LLC v. Brennan, 772 F.3d 945, 949, 951 n.7 (1st Cir. 2014); Gray Holdco, Inc. v. Cassady, 654 F.3d 444, 454-55 (3d Cir. 2011); and Messina v. North Central Distributing, Inc., 821 F.3d 1047 (8th Cir. 2016).

15

its delay and litigation conduct, which the court has now rejected. (Doc. 24 at 6-7.)

Section 3 of the FAA provides that the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. The court therefore stays this action pending completion of arbitration.

## III. CONCLUSION

For the reasons stated,

IT IS THEREFORE ORDERED that Experian's motion to compel arbitration (Doc. 21) is GRANTED, this matter shall be REFERRED to arbitration in accordance with this memorandum opinion and order, and the case shall be STAYED in the interim. The parties are DIRECTED to provide a report to the court every 90 days as to the status of the arbitration.

/s/   Thomas D. Schroeder
United States District Judge

September 17, 2025